### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

MARCUS WALKER,                          :

      **Plaintiff**      :   **CIV. ACTION NO. 3:23-CV-966**

      v.               :   **(JUDGE MANNION)**

MR. SMITH, *et al.*,                    :

      **Defendants**      :

### MEMORANDUM

Presently before the court in this prisoner civil rights case is defendants' motion to dismiss plaintiff's amended complaint. For the reasons set forth below, the motion will be granted in part and denied in part, and plaintiff will be granted leave to file a second amended complaint.

### I.   BACKGROUND

Plaintiff, Marcus Walker, an inmate in Huntingdon State Correctional Institution ("SCI-Huntingdon") who was incarcerated in Camp Hill State Correctional Institution ("SCI-Camp Hill") at all relevant times, brings the instant case pursuant to 42 U.S.C. §1983, alleging civil rights violations arising from an incident in which he was fired from his prison job. The case is proceeding on Walker's amended complaint. (Doc. 23).

According to the allegations in the amended complaint, Walker was working in the kitchen at SCI-Camp Hill in February 2022. (*Id.* at 2). Supervisors in the kitchen removed him from his job on February 25, 2022 "due to him no longer being able to report to work." (*Id.*) He was placed in the "general labor pool," a designation given to inmates who do not have a work assignment. (*Id.*) Walker was then moved from his assigned cell to a different cell on February 27, 2022, because he was no longer a kitchen worker. (*Id.*)

On February 28, 2022, Walker asked defendant Fells, a unit manager in the prison, why he had been removed from his job and transferred to another cell. (*Id.*) Fells purportedly responded, "I'll look into it." (*Id.*) Walker then spoke with defendant Smith, a food service steward in the prison, later that day, and Smith told him, "you['re] gonna have to take a break for a while." (*Id.*) The amended complaint alleges that as of this date, Walker had not been given any "due process" or work reports related to the loss of his job as was purportedly required by Pennsylvania Department of Corrections ("DOC") policy. (*Id.*)

On March 13, 2022, Walker filed a grievance about his job being taken away without due process. (*Id.* at 3). On March 16, 2022, Walker received

an "action copy" related to his grievance, which indicated that defendant Blough was the grievance officer assigned to investigate it. (*Id.*)

On March 17, 2022, Smith allegedly filed a work report that the amended complaint characterizes as "extremely defamatory and capricious." (*Id.*) The work report included a purportedly false claim that Walker was "sabotaging meals to get others sick." (*Id.*) The amended complaint notes that the work report was filed one day after the processing of Walker's grievance and that Smith and Blough "would have been notified" of the substance of Walker's grievance. (*Id.*) The amended complaint asserts that Smith filed the work report in retaliation for Walker filing a grievance challenging the loss of his job. (*Id.*) Blough purportedly entered the work report "into the system" shortly after being assigned to investigate Walker's grievance. (*Id.*) Walker subsequently pursued an appeal of his grievance. (*Id.*) Defendant Heist was allegedly involved in handling the appeal. (*Id.*)

On April 27, 2022, Walker spoke with defendant Fells, who purportedly informed Walker that he would be "officially" removed from his job beginning that day. (*Id.* at 4). Fells asked Walker to sign a document related to the termination but Walker refused to do so, worrying that such an action would show that he agreed with the actions that had been taken to that date. (*Id.*)

3

Walker asked for a copy of the document, but Fells refused to give it to him. (*Id.*)

On May 2, 2022, defendant Blough responded to Walker's grievance. (*Id.*) The response purportedly stated that Walker would be paid for the time in which he was "unofficially" removed from his job, but did not reinstate Walker to his job. (*Id.*) The response also "avoided or bypassed" the issues Walker raised in his grievance and purportedly "acknowledged" Walker's claims "through omission." (*Id.*)

Walker wrote to Fells on May 7, 2022, asking which staff member authored the work report. (*Id.*) Fells's response stated simply, "Smith." (*Id.*) Walker then appealed his grievance to the facility manager on May 20, 2022, and received an "appalling" response from defendant Gourley, who purportedly "all but admitted" that Walker's rights had been violated, but refused to "reprimand" the officials involved or otherwise "properly handle the issues at hand." (*Id.*) Walker then allegedly appealed his grievance through all stages of appellate review but was denied relief. (*Id.*) Walker allegedly tried to obtain employment at SCI-Camp Hill at a later date, but was denied because of the work report authored by Smith. (*Id.*)

The amended complaint names as defendants Smith, Fells, Blough, Heist, and Gourley. (*Id.* at 1-2). Walker asserts the following claims: (1)

4

retaliation in violation of the First Amendment by Smith and Blough; (2)

violation of Walker's rights to due process and equal protection under the

Pennsylvania Constitution and conspiracy to violate Walker's civil rights by

all defendants; (3) defamation under Pennsylvania law by Smith, Blough,

Fells, and Gourley; (4) negligence under Pennsylvania law by all defendants;

and (5) assumpsit under Pennsylvania law by Smith, Fells, and Blough. (*Id.*

at 5). Walker seeks damages, injunctive relief, and declaratory relief. (*Id.* at

6).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief may be granted."

Under Rule 12(b)(6), the court must "accept all factual allegations as true,

construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203,

210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231

(3d Cir. 2008)). While a complaint need only contain "a short and plain

statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual

allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007), a complaint must plead "enough facts to state a claim to relief that is

5

plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

6

## III.   DISCUSSION

### A.   Motion to Dismiss

Walker's civil rights claims are filed pursuant to 42 U.S.C. §1983.

Section 1983 authorizes redress for violations of constitutional rights and

provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory . . .
> subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for
> redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983,

a plaintiff must demonstrate that the challenged conduct was committed by

a person acting under color of state law and deprived the plaintiff of rights,

privileges, or immunities secured by the Constitution or laws of the United

States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms,

Section 1983 does not create a substantive right, but merely provides a

method for vindicating federal rights conferred by the United States

Constitution and the federal statutes that it describes. *Baker v. McCollan*,

443 U.S. 137 (1979).

Defendants' motion to dismiss advances five arguments for dismissal

of Walker's claims: (1) that the amended complaint fails to state a retaliation

claim because Walker has not alleged a sufficiently adverse action to support a retaliation claim and has not alleged causation; (2) that the amended complaint fails to allege a conspiracy because it fails to allege any agreement by the defendants; (3) that Walker's claims for violation of the Pennsylvania Constitution should be dismissed because Pennsylvania law does not allow claims for damages for constitutional violations and his claims for injunctive and declaratory relief are moot; (4) that defendants are entitled to sovereign immunity from Walker's tort law claims; and (5) that Walker's assumpsit claim should be dismissed as frivolous. (Doc. 25). In response, Walker withdraws his claims for violation of the Pennsylvania Constitution but otherwise opposes the motion. (Doc. 29). The court will accordingly grant the motion to dismiss the claims for violation of Walker's right to due process and equal protection under the Pennsylvania Constitution and address defendants' other arguments below.

## 1.    Retaliation

To state a retaliation claim, a plaintiff must allege: (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action. *Mitchell v. Horn*,

318 F.3d 523, 530 (3d Cir. 2003). Causation may be pleaded by alleging either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing. *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361-62 (3d Cir. 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Defendants acknowledge for purposes of the instant motion that Walker engaged in constitutionally protected conduct when he filed a grievance, but they argue that Walker fails to allege a sufficiently adverse action to support a retaliation claim, and that he fails to allege a causal connection between his protected conduct and the allegedly retaliatory actions. (Doc. 25 at 12-15). Defendants urge this court to follow the reasoning of *Shegog v. Grinell*, No. 1:21-CV-357, 2023 WL 4687641, at *4 (W.D. Pa. Mar. 24, 2023), where the Western District of Pennsylvania held that a single negative performance evaluation by a plaintiff's employer does not constitute a sufficiently adverse action to support a retaliation claim. (Doc. 25 at 13-14).

The court will deny this portion of the motion to dismiss insofar as it requests dismissal of the retaliation claim against Smith. Although the court agrees that *Shegog* is a relevant persuasive authority, the court reads

9

*Shegog* as standing for the proposition that a single negative performance evaluation is not sufficient to support a retaliation claim unless it leads to other tangible negative consequences for the plaintiff. *See Shegog*, 2023 WL 4687641, at *4 ("One negative evaluation, *standing alone*, is not enough to constitute an adverse action." (emphasis added) (quoting *James v. A.C. Moore Arts & Crafts Inc./SBar's*, No. 21-1733, 2022 WL 327012, at *3 (3d Cir. Feb. 3, 2022))); *Id.* ("Unfair reprimands and negative performance reviews generally are not materially adverse actions unless they are accompanied by tangible job consequences." (cleaned up) (quoting *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 580 F. Supp. 3d 114, 130 (E.D. Pa. 2022))). Thus, a negative performance evaluation may be sufficient to support a retaliation claim where it "effect[s] a material change in the terms or conditions of [the plaintiff's] employment." *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001), *overruled in nonrelevant part by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Here, Walker alleges that Smith authored a false work report claiming that Walker was "sabotaging meals to get others sick," (Doc. 23 at 3), and that this report led to him being denied other prison jobs in the future, (*id.* at 4). These allegations are sufficient to plead a retaliatory action that would deter a person of ordinary firmness from exercising his constitutional rights

because it is alleged that the negative (and purportedly false) evaluation of Walker's work caused other tangible negative consequences for him in the future. *See Weston*, 251 F.3d at 431.

The amended complaint also adequately pleads causation. Liberally construed, the amended complaint alleges that Smith was involved in the initial decision to terminate Walker from his job and that Smith then filed the allegedly retaliatory work report one day after Walker's grievance complaining about the loss of his job was processed. This unusually suggestive temporal proximity is sufficient, at this stage, to plead a causal connection between Walker's grievance and Smith's allegedly retaliatory action.

The court will dismiss the retaliation claim, however, to the extent that it is asserted against defendant Blough. The only actions that Blough allegedly performed in relation to the work report was to enter it "into the system." (Doc. 23 at 3). This appears to simply be an administrative task that Blough was required to perform as the grievance officer investigating Walker's underlying grievance; it is not a sufficiently adverse action to support a retaliation claim against Blough. Accordingly, the court will dismiss the retaliation claim against Blough but allow it to proceed against Smith.

11

### 2.    Conspiracy

"A claim for civil conspiracy requires that two or more people conspire to do an unlawful act." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *D.R. ex rel. L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)). Thus, a plaintiff asserting a conspiracy claim must allege "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Id.* (citing *Twombly*, 550 U.S. at 556).

Walker's amended complaint plainly fails to state a conspiracy claim upon which relief may be granted. There are simply no allegations in the amended complaint of an agreement between the defendants or any allegations from which such an agreement could be inferred. The court will therefore dismiss the conspiracy claim.

### 3.    Tort Claims

Walker's state tort claims for defamation and negligence will be dismissed based on sovereign immunity. Pennsylvania law provides that Commonwealth employees acting within the scope of their employment are

12

entitled to sovereign immunity from most state law tort claims. 1 Pa.C.S. §2310. With ten limited exceptions, *see* 42 Pa.C.S. §8522, Commonwealth employees retain their sovereign immunity with respect to both intentional tort and negligence claims. *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citing *Holt v. Nw. Pa. Training P'Ship Consortium, Inc.*, 694 A.2d 1134, 1139 (Pa. Commw. Ct. 1997)). None of the ten exceptions to sovereign immunity apply in the instant case. Thus, the sole question becomes whether defendants were acting within the scope of their employment when they committed the alleged torts.

Walker argues that defendants were not acting within the scope of their employment because Smith waited a significant amount of time before filing a work report relating to Walker's removal from his employment and defendants otherwise allegedly intentionally failed to follow relevant DOC policies. (Doc. 29 at 9-10).

Walker's argument is meritless. A defendant's action is within the scope of his employment if (1) it is the kind of action that the employee is employed to perform; (2) it occurs substantially within the job's authorized time and space limits; and (3) it is motivated at least in part by a desire to serve the employer. *Farmer v. Decker*, 353 F. Supp. 3d 342, 350 (M.D. Pa. 2018). The actions that defendants allegedly performed—removing Walker

from his prison job, filing a work report relating to the removal, entering the work report into the administrative system used to track such reports, and responding to grievances and appeals related to the removal—are plainly within the scope of their employment. Walker's argument that defendants willfully violated DOC policy in the manner in which they performed these actions does not alter this conclusion. Allegations that a defendant's "conduct constitutes a crime, actual fraud, actual malice or willful misconduct" does not abrogate sovereign immunity under Section 2310. *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 594 (M.D. Pa. 2010) (citing *Yakowicz v. McDermott*, 548 A.2d 1330 (Pa. Commw. Ct. 1988)). Thus, because defendants were clearly acting within the scope of their employment when they performed the actions that give rise to Walker's defamation and negligence claims, they are entitled to sovereign immunity from those claims and the claims will be dismissed. *See* 1 Pa.C.S. §2310.

### 4.    Assumpsit

A claim for assumpsit is a common law action for breach of a promise or contract in which one person has undertaken to do some act or pay something to another. *Assumpsit*, BLACK'S LAW DICTIONARY (12th ed. 2024). Although it is somewhat unclear from the amended complaint what facts give rise to Walker's assumpsit claim, he asserts in his brief in opposition to the

14

motion to dismiss that defendants' actions violated the code of ethics governing the conduct of DOC employees and relevant DOC policies. (Doc. 29 at 12). Walker characterizes the code of ethics and DOC policies as contracts between the DOC and its employees to which Walker and other DOC inmates are third-party beneficiaries. (*Id.*)

Putting aside whether these allegations are properly before the court,[1] and assuming, for the sake of argument, that the code of ethics and relevant DOC policies may be treated as contracts, Walker has still not pleaded sufficient facts for his assumpsit claim to proceed. "[I]n order for a third party beneficiary to have standing to recover on a contract" under Pennsylvania law "both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992). Walker has not pointed to any affirmative statements in the code of ethics or the relevant DOC policies giving DOC prisoners the right to enforce the terms of the documents as third-party beneficiaries. The only statements Walker has cited for this purpose are general precatory statements at the beginning of the documents indicating that correctional staff are supposed to act in

---

[1] A complaint may not be amended by a brief in opposition to a motion to dismiss. *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

ways that help inmates and the community; these statements do not affirmatively give inmates the right to enforce the terms of the documents as third-party beneficiaries. (*See* Doc. 29 at 12-13). The court will accordingly dismiss Walker's assumpsit claim for failure to state a claim upon which relief may be granted.

## B.   Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. The court will deny leave to amend as futile with respect to Walker's defamation and negligence claims because those claims fail as a matter of law. The court will additionally deny leave to amend as to Walker's due process and equal protection claims given that Walker assents to dismissal of these claims. The court will grant leave to amend with respect to the dismissed conspiracy and assumpsit claims and the dismissed retaliation claim against defendant Blough because the court cannot say as a matter of law, at this stage, that amendment of these claims would be unjust or futile.

16

## IV. CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part defendants' motions to dismiss, dismiss Walker's defamation, negligence, due process, and equal protection claims with prejudice, dismiss his conspiracy and assumpsit claims without prejudice, and allow the case to proceed with respect to his retaliation claim against defendant Smith. Walker will be granted leave to file a second amended complaint. An appropriate order shall issue.

Malachy E. Mannion
United States District Judge

Dated: 8/28/24
23-966-01

17